**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| v. | ) Criminal Action No. 08-193 |
| | ) Civil Action No. 14-796 |
| AARON LAMONT WILLIAMS | ) |
| | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

Defendant Aaron Lamont Williams ("Williams"), a prisoner in Federal custody, filed a motion to correct sentence pursuant to 28 U.S.C. § 2255. Williams argues that after the Supreme Court's decision in Descamps v. United States, 133 S.Ct. 2276 (2013), he no longer qualifies as an armed career criminal and, therefore, is entitled to immediate release. (ECF No. 47 at 3.) At his June 12, 2009 sentencing hearing, this court determined that Williams was an armed career criminal, and imposed the mandatory minimum term of imprisonment of 180 months. (ECF No. 41.) The government argues that Williams is ineligible for a sentencing reduction because he is still properly classified as an armed career criminal. (ECF No. 55 at 3.)

Because, as discussed below, Williams has three prior convictions for serious drug offenses that classify him as an armed career criminal, even after Descamps, the court will deny Williams' motion.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A. Williams' Prior Convictions and Sentence in This Case

On February 6, 2009, Williams pleaded guilty in this court to being a felon in possession

of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (ECF No. 9 (Indictment); ECF

No. 31 (Guilty Plea); ECF No. 42 at 2.)  Williams was sentenced pursuant to the Armed Career

Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because he had three prior convictions for serious

drug offenses. (ECF No. 58 (Transcript of 6/12/09 Sentencing Hearing) ("H.T.") at 3.)

At the sentencing hearing, the court listed the three prior drug offense convictions that

qualified as predicate offenses under the ACCA: (1) a July 9, 1998 conviction for possession

with intent to deliver a controlled substance at Docket No. 1283-1997 in the Court of Common

Pleas of Washington County, Pennsylvania, (2) a November 3, 2000 conviction for possession

with intent to deliver cocaine at Docket No. 2607-1999 in the Court of Common Pleas of

Washington County, Pennsylvania, and (3) a January 16, 2002 conviction for possession with the

intent to deliver crack cocaine at Docket No. 1200-2001 in the Court of Common Pleas of

Washington County, Pennsylvania.[1] (Id. at 5.)  These same prior convictions were specifically

set forth in the single-count Indictment to support the charge that Williams violated both the

felon in possession statute (18 U.S.C. § 922(g)) and the ACCA (18 U.S.C. § 924(e)(1)) by

---

[1] Although the court referred to the third conviction as a conviction for possession with intent to
sell crack cocaine during the sentencing hearing, the conviction was for violation of
Pennsylvania's conspiracy statute, based upon Williams' agreement with a third party to sell
cocaine. (H.T. at 5; ECF Nos. 55-6 and 55-7; Presentence Investigation Report, dated April 27,
2009 at 13.)  The reference to the offense as a possession offense rather than a conspiracy
offense does not change the result of the ACCA analysis.

possessing a firearm on or about April 15, 2008.[2] (ECF No. 9.)  As noted above, Williams

pleaded guilty to violating both statutes on February 6, 2009. (ECF No. 31.)

At the sentencing hearing, this court determined that Williams was subject to the

enhanced penalties set forth in the ACCA, which increased the applicable offense level under the

federal sentencing guidelines from 21 to 30, and triggered a 180-month mandatory minimum

sentence of imprisonment. (H.T. at 5-6.)  The applicable advisory guideline range for

imprisonment was 180-210 months, and the court sentenced Williams to a term of imprisonment

of 180 months, the statutory mandatory minimum sentence under the ACCA. (Id. at 5-7, 16-17.)

Had the ACCA not applied to Williams, he would have been subject to a maximum term of

imprisonment of 120 months under 18 U.S.C. § 924(a)(2).  The maximum term of imprisonment

under the ACCA is life. 18 U.S.C. §§ 924(e); 3559(a)(1).

At no time during his sentencing hearing did Williams object to the court's recitation of

his three prior state drug convictions, classification as an armed career criminal based upon those

predicate offenses, or calculation of the applicable sentencing guidelines range. (Id. at 3-5, 8-11,

14, 25.)  Although Williams originally argued that his prior conviction for the crime of escape

was not a violent felony under the ACCA, at the sentencing hearing Williams conceded that his

three prior felony drug convictions subjected him to the provisions of the ACCA, making any

argument about the escape conviction moot. (Id. at 3-4.)  Williams had also been convicted in

state court of terroristic threats in July 1998.

In June 2014, Williams filed a § 2255 motion arguing that he no longer qualifies as an

armed career criminal after Descamps. (ECF No. 42 at 1.)

---

[2] The Indictment properly refers to the 2002 conviction as "Criminal Conspiracy/Unlawful
Delivery of Cocaine." See, supra n.1.

**B. <u>Williams' § 2255 Motion and the Stay Pending *Abbott* and *Brown*</u>**

Williams argues, among other things, that a conviction under Pennsylvania law for manufacturing, delivering, or possessing a controlled substance can never be an ACCA-predicate offense under <u>Descamps</u>. (ECF No. 42 at 3-4.)  Williams contends that the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act ("PCSA"), 35 Pa. Stat. § 780-113, the statute under which he was convicted for two of the three predicate offenses, is an indivisible statute, making it improper, under <u>Descamps</u>, for this court to consider the relevant underlying documents related to his PCSA convictions to determine whether they qualify as predicate offenses under the ACCA. (ECF No. 42 at 3-4.)

When a statute is divisible, courts may use a modified categorical approach, as opposed to the categorical approach, to determine whether a prior conviction qualifies as a predicate offense under the ACCA. <u>Descamps</u>, 133 S.Ct. at 2279.  Under the modified categorical approach, sentencing courts are permitted to consult a limited class of relevant documents, such as indictments and plea colloquies, to determine which element played a part in defendant's conviction. <u>Id</u>. at 2282. In contrast, the categorical approach only permits sentencing courts to examine the elements of the statute under which the defendant was convicted. <u>Id</u>. at 2281.  The court in <u>Descamps</u> recognized that the categorical approach applies to statutes that are indivisible and the modified categorical approach applies to statutes that are divisible. <u>Id</u>. at 2279.  Under <u>Descamps</u>, a statute is divisible when it sets out a list of alternative elements that "renders opaque" which element applied to the defendant's conviction. <u>Id</u>. at 2283.

On June 19, 2014, this court granted Williams' request to stay the proceedings pending the resolution of two cases then-pending in the Court of Appeals for the Third Circuit which implicated the arguments being advanced by Williams under Descamps: United States v. Abbott, No. 13-2216 (3d Cir.), and United States v. Brown, No. 13-4442 (3d Cir.). (ECF No. 44 at 2.)

On April 4, 2014, the court of appeals decided United States v. Abbot, 748 F.3d 154 (3d Cir. 2014). In Abbott, the court held that the modified categorical approach applies to the PCSA because it lists multiple, alternative elements. Abbott, 748 F.3d at 158. In other words, after Abbott, when determining whether a conviction under the PCSA qualifies as a predicate offense for ACCA purposes, a court may consider the relevant court documents of the underlying conviction. Id. at 157.

On September 2, 2014, the Court of Appeals for the Third Circuit issued its opinion in United States v. Brown, 765 F.3d 185 (3d Cir. 2014), and held that the categorical approach applies to a conviction for terroristic threats. Brown, 765 F.3d at 193. In other words, for a conviction for terroristic threats to qualify as a "crime of violence" under the career offender enhancement of the sentencing guidelines, U.S.S.G. §4B1.1(a), the statute's elements must be at least the same as the generic crimes set forth in that guideline, which has an analog in the ACCA. Id. at 188 & n.1. The ACCA, at § 924(e)(2)(B)(ii), and the guidelines, at § 4B1.2(a)(2) include a similar list of "generic crimes," that being "burglary, arson, or extortion," or those that involve "the use of explosives, or otherwise involve conduct that presents a serious potential risk of physical injury to another." The court concluded that a conviction under 18 Pa. Cons. Stat. § 2706(a)(1) could not be a crime of violence because the crime threatened is not an element of the offense, and may or may not involve violence. Id. at 193; see Descamps, 133 S.Ct. at 2290.

Although <u>Brown</u> interpreted the career offender sentencing guideline, the court discussed and relied upon <u>Descamps</u>' analysis of the ACCA's analog provisions.

After <u>Brown</u> was decided, the stay was automatically lifted and Williams filed a brief in support of his § 2255 motion. (ECF No. 47.)  The government filed its response on October 27, 2014, and Williams filed a reply on November 3, 2014. (ECF Nos. 55, 56.)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner who claims "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" or who claims that "the sentence was in excess of the maximum authorized by law" may move the court which imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a).  The court shall grant a prompt hearing to the defendant "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  If the court finds that the sentence was not authorized by law or has infringed on the prisoner's constitutional rights, the court shall vacate and set the judgment aside and shall discharge or resentence the prisoner, or grant a new trial, or "correct the sentence as may appear appropriate." <u>Id</u>.

## III.   DISCUSSION

### A. Statute of Limitations

As a threshold matter, the court must assess whether Williams' motion was timely filed. The statute of limitations for a § 2255 motion is one year, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, <u>if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on review;</u> or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) (emphasis added). Williams' conviction became final in June 2009. (ECF No. 41.) Williams filed the instant § 2255 motion in June 2014, far outside of the one-year limitations period established by § 2255(f). Williams, however, argues that his motion is timely under § 2255(f)(3) because it was filed within one year of the United States Supreme Court's decision in <u>Descamps</u>, which he asserts recognized a new right that is to be applied retroactively to cases on collateral review. (ECF No. 47 at 18-28.)

"The overwhelming weight of authority interpreting [<u>Descamps</u>] has actually held that there is no indication that the Supreme Court intended for its holding to be applied retroactively." <u>United States v. Imm</u>, No. 03-063, 2014 WL 6774072, at *2 (W.D. Pa. Dec. 1, 2014); <u>see</u> <u>United States v. Wilson</u>, No. 06-097, 2014 WL 3339632, at *2 (W.D. Pa. July 8, 2014) (citing <u>United States v. Patrick</u>, No. 06-034, 2014 WL 2991857, at *2 (E.D. Ky. July 2, 2014)). To date, the Supreme Court has not made <u>Descamps</u> retroactive to case on collateral review. <u>Groves v. United States</u>, 755 F.3d 588, 593 (7th Cir. 2014).

In this case, however, the government affirmatively waives the retroactivity defense and, in turn, its statute of limitations defense. (ECF No. 55 at 2 n. 2.)[3] The court must honor this waiver, as it would be an abuse of discretion to ignore the deliberate waiver of a limitations defense. See Wood v. Milward, 132 S.Ct. 1826, 1834 (2012). Under these circumstances, Williams' motion is considered to be timely under 28 U.S.C. § 2255(f)(3) because it was filed within 364 days of the Supreme Court's decision in Descamps. See Imm, 2014 WL 6774072, at *2.

**B. Williams' Continued Status as an Armed Career Criminal**

Three major issues are raised with respect to Williams' status as an armed career criminal. First, Williams argues that under Descamps his two convictions under Pennsylvania law for possession with intent to distribute are no longer serious drug offenses because the categorical approach should apply to them. Second, Williams contends that his state conviction for conspiracy is not a serious drug offense because the Pennsylvania conspiracy statute is indivisible and the categorical approach should be applied. Third, Williams argues that his terroristic threats conviction is no longer considered a violent felony under the ACCA. This court need not address Williams' terroristic threats conviction, which raises issues about the interpretation and application of the residual clause in the ACCA, because all three of Williams'

---

[3] The government specifically states: "Because the Department of Justice has made the considered decision not to challenge the determination that Descamps involves a substantive rule governing eligibility for recidivist sentencing enhancements and is thus retroactive, it affirmatively waives any defense under Teague v. Lane." (ECF No. 55 at 2 n.2.) Teague v. Lane, 489 U.S. 288, 290 (1989), held that "new constitutional rules of criminal procedure generally should not be applied retroactively to cases on collateral review." The government further asserts that "[t]he Government's affirmative waiver of this defense takes it out of the case and renders it an improper ground for the Court to address sua sponte." (ECF No. 55 at 2 n.2.) To support its assertion, the government cites Wood v. Milyard, 132 S.Ct. 1826, 1830 (2012), which held that courts are not at liberty to bypass, override, or excuse a state's deliberate waiver of a limitations defense.

prior drug convictions qualify as "serious drug offenses" for purposes of the ACCA, even after Descamps. The drug and conspiracy offenses will each be separately addressed.

**1. <u>Summary of Pertinent ACCA Provisions</u>**

A conviction for being a felon in possession of a firearm generally has a maximum term of imprisonment of ten years. 18 U.S.C. § 924(a)(2); <u>see</u> <u>Imm</u>, 2014 WL 6774072, at *3. If, however, a defendant "has three previous convictions…for a violent felony or a serious drug offense, or both, committed on occasions different from one another," a mandatory minimum sentence of fifteen years imprisonment must be imposed. <u>Imm</u>, 2014 WL 6774072, at *3 (citing 18 U.S.C. § 924(e)(1)). The terms "serious drug offense" and "violent felony" are defined terms, 18 U.S.C. § 924(e)(2)(A) and (B). Section 924(e) is commonly referred to as the armed career criminal act, or ACCA.

A "serious drug offense" includes an offense "under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance…for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Under federal law, cocaine and its chemical derivatives are included in the definition of "controlled substance." 21 U.S.C. § 802(17)(C), (D).

**2. <u>Summary of the Categorical and Modified Categorical Approaches</u>**

To determine if a person has committed a serious drug offense, courts analyze the relevant criminal conviction under either the categorical approach or the modified categorical approach. Courts decide which approach is appropriate by determining whether or not a statute is divisible. <u>United States v. Trent</u>, 767 F.3d 1046, 1052 (10th Cir. 2014). According to the Supreme Court in <u>Descamps</u>, a statute is divisible when it sets out one or more elements of the offense in the alternative. <u>Descamps</u>, 133 S.Ct. at 2281. For example, when a statute states that

burglary involves entry into a building <u>or</u> an automobile, it is divisible, and the modified categorical approach should be used. <u>Id</u>. If a statute does not list multiple or alternative elements, the statute is indivisible, and the categorical approach is appropriate.

The modified categorical approach permits a broader analysis than the categorical approach. Under the categorical approach, the court may only look to the elements of the statute under which the defendant was convicted to determine whether the prior crime qualifies as a "serious drug offense." <u>Id</u>. at 2282. In contrast, when the modified categorical approach applies, a sentencing court may examine underlying documents to determine whether the circumstances of a prior conviction qualify that conviction as a "serious drug offense." <u>Shepard v. United States</u>, 544 U.S. 13, 16 (2005); <u>see</u> <u>Descamps,</u> 133 S.Ct. at 2281. Permissible documents the court may consider under the modified categorical approach are: (1) charging documents, (2) plea agreements, (3) transcripts of plea colloquies, (4) findings of fact and conclusions of law from a bench trial, and (5) jury instructions and verdict forms. <u>Johnson v. United States</u>, 559 U.S. 133, 144 (2010). Because the modified categorical approach permits courts to look outside the elements of the statute under which a defendant was previously convicted and consider specific, underlying documents, it allows for a broader analysis of the predicate offense.

**3. <u>Williams' Prior Convictions</u>**

**a) <u>Possession with Intent to Distribute a Controlled Substance Convictions</u>**

**(i) Application of <u>Abbott</u>**

In <u>Abbott</u>, the Court of Appeals for the Third Circuit unequivocally stated that section 780-113 of the PCSA, the Pennsylvania statute criminalizing possession with intent to distribute a controlled substance, is divisible. <u>Abbott</u>, 748 F.3d at 158. As a result, the modified categorical approach applies to Williams' prior convictions for possession with intent to distribute crack

cocaine and this court can look to underlying documents to determine if Williams' convictions

qualify as predicate offenses.  Even though Williams argues that his possession with intent to

distribute convictions should not be considered "serious drug offenses," under the modified

categorical approach his offenses qualify as ACCA predicate crimes.

An order from the Court of Common Pleas of Washington, Pennsylvania shows that on

July 9, 1998, Williams pleaded guilty to possession with intent to distribute a controlled

substance, crack cocaine, in violation of 35 Pa. Stat. § 780-113(a)(3). (ECF No. 55-4 at 2.)  In

the same court, on November 3, 2000, Williams pleaded guilty to possession with intent to

distribute cocaine in violation of the same statute. (ECF No. 55-3 at 2.)  Each of these offenses

has a maximum sentence of ten years or more. 35 Pa. Stat. § 780-113(f)(1).  Because a maximum

sentence of ten years or more is applicable to these offenses, and both involve the possession of

cocaine, which is a controlled substance, they qualify as "serious drug offenses" under the

ACCA. 18 U.S.C. § 924(e)(2)(A)(ii).

These offenses qualify as two serious drug offenses for purposes of the ACCA.

### (ii)  Application of **Apprendi**

Williams, in footnote four of his brief, requests an opportunity to file a supplemental brief

distinguishing Abbott based upon Apprendi v. New Jersey, 530 U.S. 466 (2000). (ECF No. 47 at

9 n.4.)  The court need not entertain this request because Apprendi does not apply to this case.

In Apprendi, the United States Supreme Court held that, other than the fact of a prior

conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

maximum must be submitted to a jury and proved beyond a reasonable doubt. Apprendi, 530

U.S. at 466.  It is unconstitutional for a sentencing judge, except for the fact of a prior

conviction, to authorize an increase in the maximum punishment based upon a finding of

preponderance of the evidence. Id. at 495. The Apprendi inquiry has two stages. United States v. Mack, 229 F.3d 226, 238 (3d Cir. 2000) (citing Apprendi, 530 U.S. at 490). First, a court must determine the prescribed statutory maximum sentence for the crime of which the defendant was convicted and assess whether the defendant's ultimate sentence exceeded it. Mack, 229 F.3d at 238. If the defendant's sentence exceeded the prescribed maximum sentence, the court must address the second question: whether the enhanced sentence was based on the fact of a prior conviction. Id. Apprendi specifically exempts "the fact of a prior conviction" from the rule that a jury decide certain penalty-enhancing factors. Apprendi, 530 U.S. at 466. If the enhanced sentence was based upon a prior conviction, then the rule of Apprendi does not apply. Mack, 229 F.3d at 238.

In this case, Williams' conviction was constitutional under the Apprendi inquiry. At the time of sentencing, the court sentenced Williams pursuant to the ACCA based upon his three prior convictions for serious drug offenses. When applying the ACCA, the court considered: (1) the July 9, 1998 conviction for possession with intent to deliver a controlled substance, (2) the November 3, 2000 conviction for possession with intent to deliver cocaine, and (3) the January 16, 2002 conviction for conspiracy to distribute cocaine. (H.T. at 5); see supra n.1. Because the decision to increase Williams' penalty under the ACCA was based upon three prior convictions, Apprendi does not apply. Apprendi, 530 U.S. at 466. Under the circumstances, additional briefing concerning Apprendi will not be helpful.

**b) Criminal Conspiracy Conviction**

Under Pennsylvania law, any agreement between two or more people to "commit a crime" is prohibited. 18 Pa. Cons. Stat. § 903(a)(1).  Williams argues that because the language in section 903 does not specifically enumerate alternative elements, the strict categorical approach should apply to his 2002 conviction for conspiracy to distribute cocaine.  According to Williams, under that approach, none of the underlying documents from that conviction should be considered in this case. (ECF No. 47 at 10.)  Williams contends that the court should only look to the statute under which he was convicted, and because criminal conspiracy is not an inherently violent felony or a serious drug offense, that conviction should not qualify as a predicate offense for purposes of the ACCA. (Id. at 11-14.)  This court disagrees.

    **(i)    The Modified Categorical Approach Applies to Pennsylvania's Criminal Conspiracy Statute**

Although the Court of Appeals for the Third Circuit has not decided after Descamps whether the Pennsylvania criminal conspiracy statute is divisible, the United States District Court for the Eastern District of Pennsylvania concluded that Pennsylvania's criminal conspiracy statute, 18 Pa. Cons. Stat. § 903(a), is divisible. United States v. Thompson, No. 12-418-5, 2014 WL 6819973, at *2 (E.D. Pa. Dec. 4, 2014).  On its face, the criminal conspiracy statute requires that there be another crime that is the object of the conspiracy. 18 Pa. Cons. Stat. § 903(a); see Thompson, 2014 WL 6819973, at *2.  The grading of a conspiracy offense depends upon the underlying criminal objective. 18 Pa. Cons. Stat. § 905(a); see Thompson, 2014 WL 6819973, at *2.  Pennsylvania law requires the prosecution in a criminal conspiracy case to "show that a specific crime was the object of the conspiracy," and "the crime that was the object of the conspiracy must be defined for the jury." United States v. Preston, 910 F.2d 81, 86 (3d Cir. 1990).  In these circumstances, Pennsylvania's criminal conspiracy statute has "multiple,

alternative versions of the offense based on the particular underlying crime that is the object of the conspiracy." Thompson, 2014 WL 6819973, at *2; see Trent, 767 F.3d at 1057. As a result, the district court held, in Thompson, that the Pennsylvania criminal conspiracy statute, 18 Pa. Cons. Stat. § 903(a), is divisible and the modified categorical approach applies.

The Court of Appeals for the Tenth Circuit also applied the modified categorical approach to a conspiracy statute that is similar to the Pennsylvania conspiracy statute. Trent, 767 F.3d at 1057. In doing so, it relied upon pre-Descamps precedent, which had not been overruled by Descamps. Specifically, the Court of Appeals for the Tenth Circuit held that the modified categorical approach should be used to determine whether a defendant's prior conspiracy conviction under Oklahoma law qualified as a predicate offense under the ACCA. Id. The Oklahoma conspiracy statute provides that "if two or more persons conspire…[t]o commit any crime[,]…they are guilty of a conspiracy." 21 Okla. Stat. tit. 21, § 42. According to the Court of Appeals for the Tenth Circuit, this statute references and incorporates all state criminal offenses; a sentencing court cannot determine which "crime" is applicable unless it considers the relevant section of the criminal code. Trent, 767 F.3d at 1057.

In Trent, the court analyzed whether the object of the conspiracy was an element of the offense because the underlying object must be an element of the state conspiracy offense in order for a conspiracy statute to be divisible. Id. at 1060-61. Descamps speaks in terms of "alternative elements" or "potential offense elements," rather than just using the language "statutory phrases." Id. at 1058 (citing Descamps, 133 S.Ct. at 2281). A list of alternatives in a criminal statute does not necessarily mean that the alternatives are alternative elements under Descamps. Id. If the alternatives are not "elements" of the crime, the modified categorical approach is inapplicable. Id. To determine the elements of an offense, courts consider "how [the state's]

courts generally instruct juries with respect to that offense." Id. at 1062 (citing United States v. Royal, 731 F.3d 333, 341 (4th Cir. 2014)). Sentencing courts should inquire whether the object of the conspiracy is an element of the state statute in the traditional sense: "[m]ust the jury agree unanimously on what crime the conspirators agree to commit?" Id. at 1061. In Oklahoma, a jury must agree unanimously on the crime the defendant conspired to commit. Id. at 1062. As a result, the court determined that Oklahoma's conspiracy statute is divisible and the modified categorical approach is appropriate.

In reaching its decision, the Court of Appeals for the Tenth Circuit relied on United States v. Gibbs, 656 F.3d 180 (3d Cir. 2011). In Gibbs the court applied the same analysis as the court in Trent and considered a Delaware statute that forbids a person from "wearing body armor during the commission of a felony." 11 Del. Code § 1449(a). The court of appeals found that the body armor statute can be violated in several different ways. Gibbs, 656 F.3d at 187. The statute proscribes a person from wearing body armor during the commission of a felony, but it leaves the underlying felony undefined. Id. The use of the word "felony" incorporates by reference the Delaware list of all felonies. Id. The court of appeals could not determine from the face of the statute alone whether a violation of the Delaware body armor statute is an ACCA predicate offense; it had to "look to the underlying facts of the conviction to determine if [a violation] is a violent felony or serious drug offense." Id. The court determined in Gibbs that the Delaware body armor statute is divisible and the modified categorical approach applies. Id.

The court concluded that applying the modified categorical approach to the Delaware body armor statute did not entail an "elaborate factfinding process" of the defendant's prior offenses. Id. (citing Taylor v. United States, 495 U.S. 575, 601 (1990)). Utilizing this approach also did not "force sentencing courts to hold mini-trials" which are prohibited. Preston, 910 F.2d

at 86 n. 3; see Taylor, 495 U.S. at 602.  All the modified categorical approach requires is a

determination of what the underlying felony was that the defendant committed during the

commission of the crime. Gibbs, 656 F.3d at 187.  Once the underlying felony is determined,

sentencing courts determine whether the underlying crime meets the ACCA's definition of a

"serious drug offense." Id. at 188.

The Court of Appeals for the Tenth Circuit also cited Coronado v. Holder, in which the

Court of Appeals for the Ninth Circuit determined that an alien was rendered inadmissible under

8 U.S.C. § 1182(a)(2)(A)(i)(II) after applying the modified categorical approach to an alien's

prior conviction under a California drug conspiracy statute. Coronado v. Holder, 759 F.3d 977,

985 (9th Cir. 2014).  Under 8 U.S.C. § 1182(a)(2)(A)(i)(II), "any alien convicted of, or who

admits to have committed…a violation of (or a conspiracy or attempt to violate) any law or

regulation of a State…relating to a controlled substance (as defined in section 802 of title 21), is

inadmissible." Id. at 982.  The court found the California statute was divisible because it

"identifie[d] a number of controlled substances by referencing various California drug schedules

and statutes and criminalize[d] the possession of any one of those substances." Trent, 767 F.3d at

1056 (citing Coronado, 759 F.3d at 985).

The reasoning applied by these courts of appeals is consistent with pre-Descamps

Supreme Court precedent that was not overruled by Descamps.  In James v. United States, 550

U.S. 192, 196 (2007), the Court considered whether attempted burglary was a violent felony

under Florida law for purposes of the ACCA.  Florida's general attempt statute, Fla. Stat. §

777.04(1), provided:

> [A] person who attempts to commit an offense prohibited by law and in such attempt
> does any act toward the commission of such offense, but fails in the perpetration or is
> intercepted or prevented in the execution thereof, commits the offense of criminal
> attempt….

Fla. Stat. § 777.04(1).  The Supreme Court held that the offense of conviction, attempted

burglary, was a violent felony. James, 550 U.S. at 212.  In reaching this decision, the Supreme

Court looked to the charging document to determine the specific offense that the defendant

committed. Id.; see Trent, 767 F.3d at 1056.  Although the Supreme Court said nothing about

whether the general attempt statute, Fla. Stat. § 777.04(1), was divisible, a contrary

determination would render the decision inconsistent with Descamps because the Court reviewed

the charging document to determine which specific crime the defendant allegedly attempted.

Trent, 767 F.3d at 1056-57.

  To hold that conspiracy or attempt statutes are not divisible because they do not explicitly

list every underlying felony in their text would mean that state crimes such as attempt, aiding and

abetting, solicitation, or conspiracy would not ordinarily qualify as predicate offenses for

purposes of the ACCA. Id. at 1057.  This court rejects such a notion.  This court finds persuasive

the approaches outlined in Trent, Gibbs, and Coronado and concludes that the Pennsylvania

conspiracy statute is divisible.

  The Oklahoma conspiracy statute at issue in Trent has language that is similar to section

903 which is at issue here.  A careful comparison of the divisible Oklahoma statute in Trent to

the instant section 903 language confirms the resemblance. The relevant Oklahoma conspiracy

statute, 21 Okla. Stat. tit. 21, § 42, provides:

    A. If two or more persons conspire…
     1. To commit any crime…
     they are guilty of a conspiracy.

21 Okla. Stat. tit. 21, § 42. The relevant Pennsylvania conspiracy statute, 18 Pa. Cons. Stat. §

903, provides:

> (a) A person is guilty of conspiracy with another person or persons to commit a
> crime if with the intent of promoting or facilitating its commission he:
>> (1) agrees with such other person or persons that they or one of them will
>> engage in conduct which constitutes such crime or an attempt or
>> solicitation to commit such crime….

18 Pa. Cons. Stat. § 903.

The Pennsylvania statute is similar to the Oklahoma statute because it does not expand or define the word "crime" as it appears in the text. Like the Oklahoma conspiracy statute in Trent, the Pennsylvania statute cross-references all state criminal offenses. Trent, 767 F.3d at 1058. Pennsylvania lawmakers could have chosen to write out, as part of the conspiracy statute, the list of all Pennsylvania crimes. There was no reason to do so because Pennsylvania already has a finite list of conduct that it considers criminal: the crimes set forth in the Pennsylvania statutes. See Trent, 767 F.3d at 1058. By referencing the word "crime," the general conspiracy statute lays out "multiple, alternative versions of the crime" of conspiracy, according to what underlying crime is the object of the conspiracy. Id.

The object of Williams' conspiracy conviction is an element of the Pennsylvania conspiracy statute. Under Pennsylvania law a jury must agree on the particular offense that was the object of the conspiracy to convict a defendant of criminal conspiracy. See Thompson, 2014 WL 6819973, at *2 n.3. To sustain a criminal conspiracy conviction, the Commonwealth of Pennsylvania must establish that: (1) a defendant entered into an agreement to commit or aid in an unlawful act, (2) with another person or persons, (3) with a shared criminal intent, and (3) an overt act was done in the conspiracy's furtherance. 18 Pa. Cons. Stat. § 903(a); see Commonwealth v. Sanchez, 82 A.3d 943, 973 (Pa. 2013). Section 903 requires jurors to agree on "the same object of the [conspiracy]." Commonweath v. Jacobs, 39 A.3d 977, 980 (Pa. 2012).

A defendant may be convicted of both conspiracy and the offense or unlawful act that was the object of the conspiracy. <u>Commonwealth v. Hoke</u>, 962 A.2d 664, 667 (Pa. 2009).

For all the reasons set forth above, this court concludes that the Pennsylvania conspiracy statute is divisible. As a result, the modified categorical will be utilized to determine whether Williams' Pennsylvania conspiracy conviction qualifies as a predicate serious drug offense for purposes of the ACCA.

### (ii) Application of the Modified Categorical Approach to Williams' Criminal Conspiracy Conviction

Under the modified categorical approach, this court may consider the underlying documents related to the prior conviction. Those documents demonstrate that Williams' conspiracy conviction is a serious drug offense because it involved violation of a controlled substances act, and the maximum term of imprisonment was at least ten years. 18 U.S.C. § 924(e)(2)(A)(ii). Williams was charged with entering into an agreement with another person to violate the PCSA. (ECF No. 55-5.) On January 16, 2002, pleaded guilty to this offense.[4] (ECF No. 55-6.) The "transcript of colloquy between judge and defendant," which may be consulted under the modified categorical approach, reflects that the object of the conspiracy was to distribute cocaine, a controlled substance, and that a ten-year term of imprisonment applied. <u>Descamps</u>, 133 S.Ct. at 2284; <u>Abbott</u>, 748 F.3d at 158; <u>see</u> <u>Shepard</u>, 544 U.S. at 16.

---

[4] The signed plea listed the charge as a violation of section "13a30" of the PCSA, i.e., 35 Pa. Stat. § 780-113(a)(30), instead of violation of Pennsylvania's criminal conspiracy statute. (ECF No. 55-6.) 35 Pa. Stat. § 780-113(a)(30) prohibits the "… the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 Pa. Stat. § 780-113(a)(30). This apparent error does not affect the analysis, and, in fact, further demonstrates that the object of the conspiracy was a drug crime.

On January 16, 2002 Williams entered a guilty plea to the conspiracy charge, and was

sentenced. (ECF No. 55-7.)   During the combined plea and sentencing hearing, the court

explained to Williams that he was being convicted of conspiracy to distribute a controlled

substance, which subjected him to a maximum penalty of ten years' imprisonment.  Williams

answered affirmatively and did not dispute the court's sentence.  Specifically, the court engaged

in the following exchange with Williams:

> THE COURT: The charge of conspiracy to commit a drug sale has a maximum penalty of ten years in jail. So the maximum you could get would be five to ten years. The recommended sentence, for this, using your prior record score of a five, and then being an offense gravity score of a five, has a recommended sentence between twelve and eighteen months as a minimum sentence. That means it's in the standard range. It's at the low end. For mitigated circumstances, that could be down to six months. This could be mitigated in light of those circumstances. Well, in aggravated circumstances, it could be up to 24 months as a minimum sentence. So what they are offering you is in the standard range. I'm not bound by those guidelines. It's just something to consider, whether I should accept this plea or not. You have the right to go to trial. By pleading guilty, you're giving up your rights to go to trial. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

(ECF No. 55-7 at 4 (emphasis added).)

> In the following exchange, the court explained:
>
> THE COURT: You have 30 days to appeal this. Can you appeal it to the Pennsylvania Superior Court on those grounds [sic]. You can ask this court for reconsideration within ten days. You can ask this court for reconsideration after I make that decision. Again, you have 30 days to appeal to the Pennsylvania Superior Court. You have the right to an attorney throughout your appellate process and you would be entitled to appointed counsel because you qualified for the Public Defender [sic]. Do you have any questions?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: The court will accept the disposition. Upon the defendant's plea of guilty to conspiracy, the court will sentence the defendant to not less than one year, not more than two years. The defendant shall be given credit for time served from March 22, 2001, and this sentence may be served concurrently with any other sentence the defendant is serving. The defendant shall be returned to S.C.I. Mahanoy forthwith to serve the balance of the sentence. All right. Thank you.

(Id. at 5.)

The colloquy indicates that Williams accepted that he was being convicted of conspiracy to sell drugs. He did not object to the court's statement about his maximum sentence. Williams did not appeal the conviction, even though the court explained he had the right to do so. Because the maximum sentence was ten years, and because the object of the conspiracy was to distribute a controlled substance, the conviction qualifies as a serious drug offense under the ACCA.

The transcript of the plea and sentencing colloquy in state court, coupled with the charging document, which discusses Williams' agreement to commit a violation of the PCSA, and the guilty plea document, which reflects that section (a)(30) of the PCSA was violated, demonstrate that the conspiracy conviction qualifies as a serious drug offense under the ACCA.

In addition to these underlying documents related to the prior conspiracy conviction, the Indictment, as well as the April 27, 2009 presentence investigation report prepared in the instant case, both confirm that Williams' 2002 criminal conspiracy conviction was a serious drug offense. As discussed above, the 2002 conviction was listed in the Indictment as a predicate offense justifying charging Williams with violation of the ACCA. (ECF No. 9.) Williams pled guilty to that charge. (ECF No. 31.) The presentence investigation report included the conspiracy conviction, and explained that "on July 31, 2000, the defendant conspired with Ricky Wheeler to deliver crack cocaine." (PIR at 13); see supra note 1. During the June 12, 2009 sentencing hearing before this court, Williams accepted as true all of the information set forth in the presentence investigation report, and voiced no objection thereto.

The court engaged in the following exchange with Williams at his sentencing hearing:

THE COURT: Okay. So Mr. Williams, did your attorney review the presentence report and the addendum with you?

THE DEFENDANT: Yes.

21

THE COURT: Do you have any other questions or issues about it?

THE DEFENDANT: No, ma'am.

…

THE COURT: Okay. There being no objections to the determination of factors contained in the presentence report and no objections to the court's tentative findings and rulings concerning the advisory guideline range, the court will accept the presentence report as accurate and will adopt the tentative findings and rulings issued on June 9th, 2009 as the court's final findings and rulings with respect to the applicable advisory guideline range.

(H.T. at 4-5.)

All these documents, and Williams prior statements before this court, and the Court of Common Pleas of Washington County, confirm that the 2002 criminal conspiracy conviction was a serious drug offense.

### (iii)   Summary

Although the Court of Appeals for the Third Circuit has yet to rule on the divisibility of Pennsylvania's conspiracy statute, at least one other court, as discussed above, applied the modified categorical approach to a similar state conspiracy statute and one district court has applied the modified categorical approach to the Pennsylvania conspiracy statute. This court finds the Court of Appeals for the Tenth Circuit's approach in Trent and the district court's analysis in Thompson to be persuasive and concludes that the Pennsylvania conspiracy statute, 18 Pa. Cons. Stat. § 903, is divisible.  Williams' reliance on Descamps is inconsequential under factually relevant case law.

Based upon the charging documents, the signed guilty plea, and the sentencing colloquy in the state court relating to the 2002 conviction for criminal conspiracy, and the Indictment, guilty plea, presentence investigation report, and sentencing colloquy in the instant case, it is

clear that the conspiracy of which Williams was convicted is a serious drug offense under the ACCA.

### 4. Conclusion

Williams had three prior convictions for serious drug offenses at the time of his June 2009 sentencing before this court, and was properly subject to enhanced penalties under the ACCA. Williams can make no showing that <u>Descamps</u> changes his status under the ACCA. Under those circumstances, Williams is not eligible for a sentencing reduction.

## IV. CERTIFICATE OF APPEALABILITY

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A movant meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Based upon the motion, files, and records of the case, the court finds that Williams did not show a substantial denial of a constitutional right or that reasonable jurists would find this court's assessment of his claims debatable or wrong. Therefore, a certificate of appealability should not issue.

## V. CONCLUSION

For the foregoing reasons, Williams does not qualify for relief under § 2255. An appropriate order will be entered contemporaneously with this memorandum opinion.

May 13, 2015                                    BY THE COURT,


                                               /s/ *Joy Flowers Conti*
                                               Joy Flowers Conti
                                               Chief United States District Judge